The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Be seated, please. All right. The first case we'll call this morning is Hicks v. Anne Arundel County. And Ms. Dixon, we'll hear from you first. Your Honor, good morning. My name is Wendy Dixon. I represent Rita Hicks with regard to this case. We claim error in the lower court in two distinct areas. The first area would be with regard to the removal of a juror, and the second area would be with regard to the jury instruction. With regard to the removal of the juror, we claim error in three separate areas. The first is that the judge impermissibly removed the juror, ostensibly for failure to follow instructions. However, the juror did not fail to follow instructions. The judge simply had not given the juror the instruction not to speak with the party or with counsel. I thought the instruction was broader than that. It said don't speak with anybody. With anybody about the case. Right, exactly. That was the instruction. Don't speak with anybody about the case and what happened here. And it was so unusual that as I... I understand your argument, which is a question of whether it was a literal violation or a generalized violation, but the judge is confronted with the question of whether the jury showed enough sympathy for a particular party without the evidence in the case. It was just an emotional response that that might be a form of bias and taint the jury. It seemed to me that your case, your whole argument for objecting to that is because you thought that jury might be favorable, which is indicative of the fact that that's a consideration the court took into account. In other words, here we are before the evidence is in the case, very early in the case, after they saw video or whatever it is, and there's an emotional reaction, and the juror empathizes. It's a nice response. It may be neutral, but it could be an indication of how the jury feels about the parties, and that's probably why you wanted the juror, but that's the same reason why the court should have excluded the juror, don't you think? No, Your Honor, I respectfully will have to disagree with that. We don't require jurors to remain neutral upon hearing evidence. They hadn't heard all the evidence of the case. They're not supposed to form any opinions until they retire to deliberate. Here we're at the very beginning of the trial. But certainly they can't decide that this person is credible or that this evidence is credible, so they can form those kinds of opinions, if you will, or decisions or conclusions in their mind. They can do that. That's what we would ask them to do. So, yes, you're right. They're not supposed to harden their stance until they get into the jury room. I thought they had to keep an open mind until they hear all the evidence and the arguments of counsel and the instructions of the court. And then they deliberate and talk to each other, and then they decide the case. That's the way it works. And we review this kind of a ruling for abuse of discretion, right? Yes. Okay. Yes, absolutely. And that's the way it should work. However, what I'm saying is this, that the juror had started to hear evidence. There had been, I believe, at least two tapes that had been played at this point. And I think that the juror, again, as I said in my brief, I think that the juror probably saw this person with an emotional response, and just as if he were to see a child crying or anybody crying. Well, why are you complaining about it? Why are you complaining about the excuse of the juror? How did that affect you? Well, first of all, I think it affects the legal process. The whole idea is that if there is any reason, we don't back jurors in this country. We don't try to get rid of all the jurors except ones who we think will assert their right. But the reason you're objecting to this juror is because you felt the juror was favorable to your side, right? Well, I won't put it quite that sharply, Your Honor, is what I'm saying. But that's the only reason for you to complain about it, because if the juror was hostile to your side, you wouldn't be arguing, right? I don't know that I agree, because isn't there a policy that we don't back jurors? If the juror said to your client, you're going to jail, and then that was reported, and the jury excluded it, you wouldn't object to that, would you? That is a conclusion about the evidence. No, it was just basically an emotional response. Or what if the juror said, you're a no good bum? I mean, my point is, the only reason you're complaining is because you felt like you were denied an advantage. And the advantage was you thought you had a favorable juror. I cannot agree with the court in putting it that way. What I did feel was that I had a juror who might be sympathetic to my client's point of view. Yes, that is true, but not because of any kind of advantage. It's just because that's the way jury trials are supposed to go. We don't have to be so bland in our selection of jurors that we just pick the first 12 that come across the table. The district court made a judgment call in these circumstances based on the same type of debate we're engaging in here. And so the question then is, do we think the court abused its discretion, which is a pretty heavy standard. It's managing the trial. It is a heavy standard, but that's why I relied on the cases from the Second Circuit as well as the cases from the D.C. Circuit. That said, if there is any reason to think that the removal of the juror has something to do with the way that the juror might rule. Let me ask you about that because you say, I think you're referring to, I think it's Brown and Thomas cases. Yes, ma'am. Now those cases, I just want to make sure I'm correct, those are criminal cases, right? Yes, ma'am. Under 47C of criminal procedure, right? Yes, ma'am. And we're here under 23B3, is that correct? Well, the rule that we're here under. Civil procedure. Yes, ma'am. But what I'm trying to say is this, and even in the Brown and Thomas cases, they said that we do not confine our holding to the fact that this is a criminal case. A civil case would have the same kind of considerations. So do you, do you think, isn't it the fact that the juror, I'm sorry, under the civil rules the court would have broader discretion, right? I'm not following what the broader discretion would be. Then under 47 criminal rules. I don't agree with that. No, that's what I'm saying, that they would not have, I believe I hear you saying that the judge would have broader discretion to dismiss a juror than they would to dismiss a judge. Under the rules of civil procedure than under criminal procedure. And I'm disagreeing with that. I think that is the same standard. And then in Brown and Thomas, those, when those jurors were dismissed, they were actually deliberating. And I believe the facts of those cases is something like one of the jurors was a holdout, and because one of the jurors was a holdout, the judge dismissed the juror. And that's when the court said that that was improper. Is that correct? Actually, it's a little bit more. The juror was a holdout, but then the juror also had, I'm about to lose my job court position. The juror had another reason that the juror was, I guess, trying to leave. But you would agree that those cases are a little bit different in posture, because the deliberations had already begun. And I think even in those cases, they said, if deliberations have already begun, then the judge should be very, very careful about dismissing jurors during deliberations. Is that right? I agree with the first part of what you said, which is that this is a different posture. But I don't agree that the court made any distinction about the fact that once deliberations start, because I believe that the standard is that once the jury is sworn, and that's what had happened here. If the jury had been sworn, had the juror come up to my client in the hallway before they had been sworn, and maybe my client was emotional or whatever and said something, then sure, you can get rid of the juror at that point if you like, or whatever. The jury hadn't been sworn. But I think that the standard is, or certainly I think that it should be, that once a juror has been sworn, now we only can remove a juror. And I think that that is what the actual rule says. You can only remove a juror for misconduct. And what I'm saying here is that there was no misconduct. The misconduct would have had to be the failure to follow instructions. And I'm saying that there was no failure to follow instructions. And I'm also saying that the only thing that could be is what the other two justices have already pointed out, which is that everyone must have perceived that this particular juror was sympathetic to my client. And that is not a reason to remove a juror. That's not misconduct. Just because you have sympathy, that is not misconduct. Thank you. Yes, and the other thing that I wanted to make sure that we talked about is the jury instruction. There are two points of error that I brought up with regard to the jury instruction. The first point of error has to do with the fact that the judge would not allow you to elicit any information with regard to the officer's financial, I guess, sake in this. The fact that the officer did not have to pay anything out of his pocket if he were to be found liable. But yet, the jury was still told that the officer's finances, the defendant's finances, can be taken into consideration when you are making a decision as to the amount of payment. And I think that that kind of impermissibly hampered us in our presentation because, again, you're telling the jury, listen, take the amount of money that this guy has into consideration. But yet, there's no evidence about the amount of money that this guy has. And the actual reality is that he would never have had to pay a dime because the county would have indemnified him. And so I believe that that can open the door for the jurors to say, hey, this poor officer is a working man. We don't want to find him liable because we don't want to break him with some avoidant damages. And I think that that was definitely prejudicial to my client, but it was also improper with regard to the jury instructions. The second issue with regard to the jury instructions was that the court—well, first of all, I think that the whole way that the maliciousness versus the recklessness versus the gross negligence came out was extremely confusing. It was something that we had argued about putting together the jury instructions in the case. And it was extremely confusing, as evidenced by the fact that the jury immediately, like about an hour after they went out, came back and said, please define recklessness. Well, the problem was that the court had told the jury, you may find recklessness with regard to any acts and omissions on the statement of charges. Well, that wasn't the only evidence of recklessness or maliciousness or gross negligence that we had. We had a bunch of evidence of those things. But didn't the judge, after the jury came back with a question, agree to do an additional jury charge? And I think the parties objected. Yes, that's correct. We objected to the additional jury charge that was proposed. And just the whole idea of re-instructing the jury, because then we'd have to re-argue. Jury instructions go together. Jury instructions are never considered in isolation. First of all, if you're going to change a jury instruction, you've got to re-instruct the jury as everything, because otherwise it gets confusing. But a jury just asked a question as to the recklessness, and the judge was actually going to, I think it's Miller, was going to charge the law in Miller, and both sides objected. Yes. That's correct. We both objected. Because, again, like I said, we've got maliciousness, we've got recklessness, and we've got gross negligence. And so I did not think it would be appropriate to underscore one thing. It would all have to be redone. But more importantly, the judge is still only limiting the jury to one piece of the case, one aspect, with regard to the recklessness. And that was just inappropriate by the judge telling the jury, look, you can find recklessness with regard to the statement of charges. The jury is thinking, well, the judge is telling us, that's the only thing we can consider, the statement of charges. It's the mens rea. It's the mens rea for the statement of charges. And that's as far as the court needs to go. It does not need to identify how each piece of evidence, whether the mens rea is represented by any piece of conduct. The charges include whatever conduct is relevant to the charges. And the charges included recklessness. And the court gave the standard definition of recklessness verbatim from our cases. And I'm not sure the court should have said anything more. No question. Your Honor, I agree that the court gave that argument. My problem is that the court gave this example. And the court didn't even say, this is one example of how you can find recklessness. The court said, recklessness is whether or not there was an error or omission in the statement of charges. But there were so many other things. The officer did not stop questioning after my client asked for an attorney. My client, the officer even admitted full stop that he should not have done that. But that, again, is what you can look at to find recklessness, maliciousness. The officer also made false statements in the application for a search warrant. The officer also made false statements in the conversation that he had with the prosecutor. We don't know what was presented to the grand jury. But again, the same kind of evidence. You haven't raised any of those issues. Oh, I did. Well, you have three issues in your appeal. Yes, that was issued. Well, there are two issues. The first one has three parts. The second has two parts. And yes, the jury instruction issue, I definitely raised. That's my whole argument. That with regard to the recklessness, that's the second part of my jury instruction argument. With regard to the recklessness, the court impermissibly limited the jury's consideration to only one aspect of the case. But there were so many others. And I enumerated the others that I brought up. And we review instructions to the jury for abuse of discretion. And we're saying that it's abuse of discretion for the court to pull out and highlight only one thing. Because what our case was, and what the case was, is that there were all these things that added together are what constituted the officer's misconduct. Not that there was just one thing that the officer did wrong. That there were all of these things that the officer did wrong. All the other witnesses were telling the officer, someone else did. Someone else did. But yet he still swore to the commissioner, as well as to the judge in the opinion search warrant, that that wasn't the case. The officer also swore that he had a video in his possession that implicated my client. That wasn't the case. He swore to all of those things. Okay. We'll hear from you on rebuttal. Thank you. All right. Mr. Mitchell. Good morning, Your Honors. Thomas Mitchell, and I'm here on behalf of Corporal Gregory Pamer in Anne Arundel County, Maryland. May it please the court. The judgment of the district court should be affirmed. The appeal is the result of a five-day jury trial where the jury found in favor of Corporal Pamer on all counts, including federal and state constitutional claims, a state malicious prosecution claim, and a gross negligence claim. There are three issues raised here on this appeal. Ms. Hicks has failed to establish any abuse of discretion or any... Do you think that the timing of the dismissal, I know there was a motion made right after the incident with the juror. Do you think the timing of the incident, the dismissal of the juror, does that make a difference? Well, it was before the deliberations. It was before the deliberations, so it was appropriate. We raised it at that time, and certainly the juror removal was appropriate. And then last question, or not last question, but next question. This whole issue of the judge not questioning the juror about impartiality, if the juror could be fair and impartial, I think the judge just dismissed the juror. I'd like to hear your position on that. We appreciate that question. Thank you, Judge Benjamin. The case law provides that any challenge to the district court's investigation of juror misconduct must be viewed in the context of the broad discretion afforded to the trial judge. So it was within her discretion. And when we look at the misbehavior, the misconduct, after being advised repeatedly not to talk about this case with anyone, after emotional testimony, this juror didn't talk to another juror. She talked to the plaintiff and said, I wish I could give you a hug. So egregious, so out of bounds, that further voir dire was not necessary would be our position. And, Your Honors, we'd really highlight in the joint extract the number of times that this juror was told not to talk about this case. That included after the jury was sat on the Thursday that we picked the jury, the judge told the entire jury, please do not discuss whatever you know about this case based on your interaction here with anybody. Please take that solemnly. And then in the preliminary instructions, she went over this ad nauseum. She told the jury, as I did last week, so this is the second time she's telling the jury, I instruct you that during the trial you are not to discuss the case with anyone, including your fellow jurors, or to permit anyone to discuss it with you. Later in the preliminary instructions, she said again, you are simply not to talk about the case. And last, the judge stated, if anyone should try to approach you or talk to you about the case or any information about the case is brought to your attention in any form other than what you hear in the courtroom, please do not discuss it with anyone, including your fellow jurors. Rather, please write a note regarding such matter and give it to the courtroom deputy so the courtroom deputy may bring it to my attention promptly. And then from there we had opening statements, some evidence was presented in the Sixth's case, and prior to the lunch break, the judge said again, please remember that you are not to talk about the case with anyone, including your fellow jurors. It was after that lunch break, your honors, which had followed emotional testimony. The record shows that Ms. Hicks was visibly upset in the courtroom, an open court. It was after that that the juror approached Ms. Hicks in the hallway and said, I wish I could give you a hug. This was more than just a pleasantry. It's clear that she was discussing the case because you have to look at the timing here. When did this occur? It was in her case in chief as she was presenting testimony, following emotional testimony. And your honors, the judges afforded a lot of discretion here for a reason. She was there. The judge boardman was present when she instructed that jury. She was present when this incident occurred in the hallway. She saw all the timing that led up to that. She understood that timing firsthand. This conduct was highly unusual. It was patently and inherently biased and prejudicial against Corporal Pamer and the county. Now, she initially declined to voir dire and strike juror number four, but upon a renewed objection at the close of evidence prior to deliberations, the court properly removed this juror. We look at the federal rules of civil procedure, 48A and B. They require at least six jurors, but no more than 12. They also require a unanimous verdict from a jury of at least six members, but we had nine here. When we struck juror number four, we still had eight jurors. So, Judge Boersman's actions were consistent with the rules of civil procedure. Further, 47C says that during a trial or deliberation, the court may excuse a juror for good cause. The case law further explains that the decision to remove a juror is generally entrusted to the sound discretion of the trial court. A failure to follow instructions is good cause to excuse a juror. This is important. From this court, Haley v. Blue Ridge Transfer Company in 1986, this court held that private communications with jurors during trial were, quote, presumptively prejudicial. Your Honor, the removal of this juror was appropriate. At the close of the evidence, Corporal Pamer in the county renewed their objection, asked that the juror be excused, noting that eight jurors remained. And it's really her language that she uses in Joint Appendix 959 and 960 as she removes this juror. Judge Boersman says she was concerned about this contact by a juror, not even with a fellow juror, but with a party in this case, which, after I instructed her, the whole jury, first when I had paneled the jury, I said, I'm going to remove this juror. I removed them on Thursday, and then again. I instruct you. I said that, I said at the trial that during the trial, you are not to discuss the case with anyone, including your fellow jurors, or to permit anyone to discuss it with you. I then said, you are simply not to talk about the case. And she did that. She talked about the case with someone, with the plaintiff no less. Juror number four violated the express instructions. This was more than just a pleasantry. Eight jurors remained. There was broad discretion here whether or not to further interview this juror, and violating the express conditions constituted good cause. For these reasons, we'd ask that this issue on appeal be rejected and affirmed. We'd also address the jury instructions, Your Honors. Ms. Hicks argues that the trial court mishandled the jury instructions. She says that the instructions were confusing to the jury, improperly limiting them regarding the method and facts, which constituted reckless conduct. Ms. Hicks cites no case law to support her appeal on this issue. We highlight for the court, Knoll v. Arston, 641F3580, 2011 case that's directly on point here. It's a police case from the state of Maryland, and it was a defense verdict in favor of the police officers. The plaintiff came to this court and said, please reverse it because of jury instructions. And this court failed to do so. We would ask this court for the same reasons articulated in there to affirm the decision of the district court here. Anything else? No, Your Honors. Appreciate that. The only other piece is whether or not Anne Arundel County was on the verdict sheet. We would just highlight that it was argued in closing instructions and that the error was harmless and that the verdict was in favor of Corporal Pamer on all counts, which rendered that argument moot because there's no underlying constitutional violation by Corporal Pamer. As a result, there can be no municipal liability or vicarious liability as a matter of law. And just in closing, Your Honors, as Your Honors highlighted, just that jury instruction real quickly, that we look at them holistically, and here these were pretty much verbatim with the modern federal jury instructions. There's a little addition from the Humbert case, but the burden challenging the jury instructions faces a high hurdle. And we would just close with saying that in the Noel case, a jury verdict, moreover, represents a good deal of work on the part of a good many people. The instructions undergirding that collective effort should not succumb lightly to semantic fencing. This was a five-day jury trial, and there is no reversible error, no abuse of discretion. And we would ask on behalf of Corporal Pamer and the county, we respectfully request that this court affirm the judgment. Thank you. Thank you, Mr. Mitchell. Ms. Dixon. Thank you, Your Honor. I'm going to look at the clock as well. With regard to the argument, with regard to the jury issue, all of the cases that were cited referred to people encroaching on the jurors. Other people who encountered jurors or said questions to the jurors. The Haley case was really unusual in that there was a person who sat in on the jury deliberations who wasn't even meant to be on the jury. That's something that's very unique. I didn't find any cases that were on all fours in terms of the factual situation with the case that we had, and nor does counsel cite any. But the point being that in our case, it wasn't that someone encountered the juror. It is that the juror encountered Ms. Hicks. And I think it's very important to note that it's not that the juror approached Ms. Hicks. They just had a chance encounter. They both were walking in the same direction. The jurors were milling about, and they encountered each other. And that's what she said. So it wasn't like she thought her out. And I guess what I want to really kind of leave you with with regard to that is that it's not problematic if a juror has sympathy for one side or the other. Jurors do that. People do that. And to excuse a juror just because you think that they're sympathetic after they've been sworn without more is inappropriate. Suppose, for example, the juror had been crying. Suppose, while the testimony in question had been happening, the juror had tears rolling down her face. You don't excuse a juror for that reason. That's not enough. You have to have some misconduct. And we're saying that the juror did not fail to follow the court's instructions because the court didn't say don't have any contact. She said don't talk about it. And that's what happened here. The juror did not talk about the case. We also want to go back to the issue that I was on with regard to the information that I brought up to the court with regard to the judge actually kind of highlighting that one thing and saying that this is where you find recklessness. We told the court, and that's on page 30 of our brief, we told the court and we made the argument that, in other words, the court's instructions indicated that the jurors were limited to the officer's conduct with regard to the application for the statement of charges in terms of consideration of recklessness. And that is the problem. The court didn't even say, for example, this is one place you can find recklessness. The court said, for recklessness, look at the application of statement of charges. And the same information that was in the application of statement of charges was also presented in the search warrant. All these things are under oath, the same action, the same omissions. But the court doesn't mention those. And I'm not saying that the court had a duty to mention any example. But I'm saying that if you're going to mention an example, first of all, I think it's error not to say this is an example. But it's a Frank's argument. And the Frank's argument is related to the statement of charges because we have the whole doctrine, which you're ignoring, about how we attack an officer when he gives a false affidavit on which charges are launched or a warrant is issued, magistrate judge issues a warrant. But we rely on the process and presumably find it OK unless the officer acted in a manner that is proscribed by Frank's. And Frank's, the court, quoted that doctrine explicitly, accurately. Thank you. I'm not ignoring Frank's at all. What I'm saying is that even if you take out Frank's, even if you take out the search warrant and the statement of charges, Well, that's the relevance. He's liable only in connection with the Frank's if you're going to. He made a mistake on the statement of charges. And the question is whether that was a reckless conduct or accidental or negligent. And that's what the instruction told the jury. I don't understand what the problem is myself. I hear you're saying that there was other conduct that may have been reckless, but that isn't the issue in connection with Frank's issue. May I respond? Please. Thank you. Yes, what we're saying is that the totality of what the officer did in this case constituted not only recklessness, we think it was gross negligence as well as maliciousness. Yeah, I'm sure you argued all that to the jury too, right? What I'm saying is that the judge's instruction carried more weight than the argument of counsel. Okay. And the judge highlighted it in a way that it was highlighted, negated, or certainly diluted any argument that I could make. Okay, thank you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin